S. Canet & Co., S. en C. y Braulio Castillo, demandantes y apelantes, *v.* N. Santini & Co., Inc., Cándido Díaz y Miguel Guzmán Texidor, demandados y apelados.

No. 5523.—*Sometido:* Diciembre 16, 1931. *Resuelto:* Noviembre 25, 1932.

*López de Tord & Zayas Pizarro*, abogados de los apelantes; *C. Domínguez Rubio y M. Guzmán Texidor*, abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

En la demanda de este caso se alegó que siendo Cándido Díaz el dueño de una finca, la vendió a José Julián Pagán e Hijos con pacto de retro; que la escritura fué otorgada ante el notario Miguel Guzmán Texidor, uno de los demandados en este caso; que el derecho de retroventa, o lo que puede considerarse como la equidad o remanente de la finca, carecía de valor al tiempo de otorgarse la escritura y después; que a pesar de esos hechos, seis o siete meses más tarde Miguel Guzmán Texidor, en representación de N. Santini & Co., Inc., entabló acción en cobro de dinero en la Corte de Distrito de Guayama contra Cándido Díaz, y que a instancias del

referido abogado, la propiedad que por ante el notario Guzmán Texidor había sido vendida por Cándido Díaz a la mercantil José Julián Pagán e Hijos, fué subastada y vendida a la demandante S. Canet & Co., S. en C., representada por su apoderado Braulio Castillo, por la suma de $1,225, de la cual $1,001.22 fueron entregados a N. Santini & Co. Inc., en pago de su sentencia, $100 fueron dejados en depósito para otro pleito, y $123.78 se le entregaron al deudor Cándido Díaz. La demanda contenía la alegación de que la demandante había actuado de buena fe, en la creencia de que, al tiempo del remate, Cándido Díaz era el dueño de la propiedad; que cuando la demandante trató de tomar posesión de la propiedad, encontró a José Julián Pagán e Hijos en posesión de la misma por virtud de la primera escritura, y que cuando la demandante trató de inscribir el título en el registro de la propiedad no pudo lograrlo porque la finca no aparecía inscrita a nombre de Cándido Díaz ni de ninguna otra persona. La demanda entonces procede a alegar que todos los demandados, a saber, N. Santini & Co., Inc., Cándido Díaz y Miguel Guzmán Texidor, tenían conocimiento del hecho de que Cándido Díaz no era el dueño de la finca, y que los aludidos demandados se combinaron para defraudar a la demandante, vendiendo en pública subasta una propiedad como perteneciente a Cándido Díaz cuando a los demandados les constaba que la misma pertenecía a una tercera persona. La demanda contenía una segunda causa de acción en que la parte demandante reprodujo las alegaciones de fraude y actuaciones dolosas imputadas a los demandados y reclamó la cantidad de $2,800 como daños punitivos. La demanda terminaba solicitando sentencia por $1,225 de la primera causa de acción, más las cantidades reclamadas en la segunda causa de acción, con intereses y costas.

La contestación negó los hechos alegados en la demanda, y el caso fué a juicio. La corte, entre otras consideraciones, estimó que no se había probado fraude. En su tentativa de probar el fraude, la demandante llevó al abogado y notario

Miguel Guzmán Texidor a la silla testifical. El explicó que era cierto que al tiempo de la subasta él tenía en su poder una escritura de venta con pacto de retro a José Julián Pagán e Hijos, pero que había omitido inscribirla. En verdad, el récord revela que hubo necesidad de tramitar un expediente de dominio. Declaró este testigo que originalmente él no fué el abogado de N. Santini & Co., Inc., pero que lo era al tiempo de la subasta, a pesar de lo cual no estuvo presente en el acto del remate.

Fuera de estos hechos, nada hay que demuestre que Guzmán Texidor, o alguna otra persona, diera algún paso activo para inducir a la demandante S. Canet & Co. a comprar la supuesta propiedad que había sido embargada por N. Santini & Co., Inc.

Según hemos dicho, la propia demandante puso a declarar a M. Guzmán Texidor, y si bien ella pudo haber controvertido las manifestaciones de él, sin embargo, garantizó ·en grado sumo la credibilidad del testigo. No cabe duda de que la corte tenía derecho a creer a un testigo que la misma demandante había ·llevado a declarar. Este testigo además dijo que cuando representó a N. Santini & Co., Inc., no tenía recuerdo alguno de la escritura de José Julián Pagán e Hijos. El peso (*gravamen*) de la imputación en este caso cae sobre la parte demandante, y no vemos manera alguna de apartarnos de la conclusión de la corte inferior de que no hubo prueba de fraude contra este abogado. Desde luego que fué un acto sospechoso el que él interviniera en la escritura y luego representara a N. Santini & Co., Inc., pero no hay el menor indicio de prueba de que lo hiciera con la intención de perpetrar un fraude contra la demandante.

Tal vez una de las circunstancias más sospechosas de este caso es el hecho de que Cándido Díaz aceptó la cantidad de $123.78 cuando lo cierto era que la propiedad la había traspasado a José Julián Pagán e Hijos.

Al igual que M. Guzmán Texidor, Cándido Díaz fué llamado como testigo de. la demandante. A instancias de la

demandante él ocupó la silla testifical por dos ocasiones. Los autos demuestran que cuando se efectuó el remate Cándido Díaz aun tenía la posesión material de la finca, tenencia que posteriormente traspasó a José Julián Pagán e Hijos. Manifestó como testigo que aceptó los $123.78 porque el márshal se los entregó por orden de la corte. En otras palabras, se le pagaba cualquier remanente (*equity of redemption*) que le quedara en la finca. Parte de la discusión en este caso giró sobre la cuestión de si la escritura que él había dado a José Julián Pagán e Hijos debía considerarse como de venta con pacto de retro simplemente, o como de hipoteca. Si era una hipoteca podría haber alguna pequeña justificación legal en el hecho de que Cándido Díaz aceptara los $123.78 como saldo a su favor. De todos modos el que él aceptara el dinero al serle ofrecido por el márshal no puede considerarse como un fraude o una combinación maliciosa con alguna otra persona a fin de lesionar los intereses de la demandante. Gran parte de la prueba en este caso fué con respecto al valor de la propiedad de que se trata y a si el llamado derecho de retroventa o al remanente tenía valor alguno.

Por los autos de este caso, no puede imputarse ni fraude ni conocimiento de fraude a N. Santini & Co., Inc. Ella tenía la idea de que la propiedad pertenecía a Cándido Díaz. No hallamos que se probara la combinación de los tres demandados al intervenir en la venta. Aun suponiendo que los actos de Guzmán Texidor fueran fraudulentos, no hay evidencia de que los cometiera en confabulación con Cándido Díaz o N. Santini & Co., Inc., ni evidencia circunstancial alguna de la cual pueda derivarse esa inferencia. Convenimos con la apelante en que es difícil probar el fraude, especialmente, según dice la demandante, cuando un abogado es uno de los actores fraudulentos, pero a un demandante se le exige mucho más de lo que se logró probar en este caso.

En lo que respecta a cualquiera posibilidad de acción

contra Guzmán Texidor por fraude o dolo, no fué ésa la teoría del pleito, y, además, la corte inferior no halló prueba satisfactoria de tal fraude o dolo.

La demandante también alegó que, en lo referente a N. Santini & Co., Inc., debió prevalecer el derecho de recobrar lo indebidamente pagado u obtenido. En efecto, la apelante cita jurisprudencia de los tribunales americanos declarativa de que el dinero así obtenido debe serle devuelto al demandante. Sin embargo, no fué esa la teoría del presente litigio. La demandada N. Santini & Co., Inc., no fué en forma alguna informada de que la demandante tenía la intención de fundar su pleito en el hecho de que el título de Cándido Díaz había dejado de existir. Además, la parte apelada llama nuestra atención hacia el artículo 1392 del Código Civil que dispone:

"En las ventas judiciales nunca habrá lugar a la responsabilidad por daños y perjuicios; pero sí a todo lo demás dispuesto en los artículos anteriores."

Así, pues, la demandante quizá tendría derecho a recobrar el precio, pero no a una acción de daños y perjuicios, cual fué la teoría de la apelante en este caso. Contra N. Santini & Co., Inc., solamente, el artículo 1392 sería el único aplicable, y la demanda en este caso no se basa en esa teoría.

Gran parte del alegato de la apelante impugna las conclusiones de la corte, y, en verdad, algunas de ellas pueden ser erróneas. La apelante insiste en que un número de actos realizados por Guzmán Texidor y por Cándido Díaz eran compatibles con la idea de una conspiración, aunque con visos de inocencia, pero, según estamos resolviendo, la prueba de fraude debe ser más fuerte de lo que resultó en este caso.

*No hallamos que se haya cometido error, y debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Hutchison está conforme con la sentencia.

El Juez Asociado Señor Córdova Dávila no intervino.